NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re : | CHAPTER 11 |
| : | (Jointly Administered) |
| **TOUCH AMERICA HOLDINGS, INC,** : | |
| *et al.* [1] : | Case No. 03-11915 (KJC) |
| Debtors : | |
| : | **Ref. Docket no. 3787** |

# MEMORANDUM[2]

Background

On December 5, 2008, the Plan Trustee for the above-captioned debtors filed a Motion for Order (1) Compelling Milbank, Tweed, Hadley & McCloy, LLP to Comply with Request of Plan Trustee and NorthWestern Entities to Turn Over Documents; or (2) in the Alternative, Compelling Milbank, Tweed, Hadley & McCloy, LLP to Respond to the Plan Trustee's Discovery Requests (docket no. 3787)(the "Motion"). In the Motion, the Plan Trustee seeks turnover, under Bankruptcy Code §§542(a) and 542(e), of documents relating to the debtors' property or financial affairs, held by Milbank, Tweed, Hadley & McCloy LLP ("Milbank"), former counsel to the debtors and the Montana Power Company.[3] Milbank opposed the Motion

---

[1] The following chapter 11 cases are being jointly administered pursuant to an Order dated June 23, 2003 (docket no. 27) : Touch America Holdings, Inc., Touch America, Inc., Entech, LLC, Touch America Purchasing Company, LLC, Touch America Intangible Holding Company, LLC, Sierra Touch America LLC, and American Fiber Touch, LLC.

[2] This Memorandum constitutes the findings of fact and conclusions of law required by Fed. R. Bankr. P. 7052. This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and §157(a). This contested matter is a core matter pursuant to 28 U.S.C. § 157(b)(2)(E).

[3] The Plan Trustee filed its first motion under Bankruptcy Code §542 for turnover of documents from Milbank on September 11, 2007 (the "2007 Motion")(docket no. 3495). The 2007 Motion states that, upon request of the Plan Trustee, Milbank agreed to turnover all documents related to representation

(docket no. 3798).

After a hearing on January 29, 2009, this Court entered an Order (docket no. 3817) granting the Motion, in part, and ordering Milbank to turn over to the Plan Trustee all documents from Milbank's representation of the Montana Power Company that Montana Power Company would have been entitled to obtain as a former client of the firm. The January 29, 2008 Order required Milbank to turn over documents to the Plan Trustee on a rolling basis, subject to the Court's further consideration of Milbank's argument that certain internal documents could be withheld.[4]

In accordance with the Court's direction at the January 29, 2009 hearing, Milbank filed a Statement Regarding the Scope of an Attorney's Obligation to Provide documents in Response to a Client Request (docket no. 3840) and the Plan Trustee filed a Brief Regarding the Scope of a Trustee's Right to Recover Documents Under 11 U.S.C. §542(a) (docket no. 3849). After further hearing on the Motion, held on February 24, 2009, Milbank was ordered from the Bench to continue to provide documents to the Plan Trustee on a rolling basis consistent with the standard

---

of the debtors, but refused to turnover any documents relating to the affairs of the Montana Power Company until resolution of the issue of which company (Touch America Holdings, Inc. or NorthWestern Corporation) was the successor to the Montana Power Company. (2007 Motion, ¶26). As a result of the 2007 Motion, the Plan Trustee served discovery requests upon Milbank to determine the extent to which Milbank jointly represented both Touch America and Montana Power Company in the same transactions. The Plan Trustee filed the current Motion upon reaching a settlement with NorthWestern Corporation and its subsidiary, Clark, Fork & Blackfoot, LLC (the "NorthWestern Entities") in which those entities agreed that any Montana Power Company documents deemed to be the property of the NorthWestern Entities could be turned over to the Plan Trustee. (Motion, p. 9). With the settlement, the Plan Trustee believed Milbank's objection regarding successorship issues to be resolved and, therefore, filed his current motion for turnover of the Montana Power Company documents.

[4]Milbank appealed this order to the District Court of Delaware and the Plan Trustee filed a cross-appeal. The appeals are being considered together under Civ. No. 09-141-SLR. The parties are currently completing briefing in accordance with a stipulated briefing schedule.

for turnover of documents by an attorney to a former client as determined by the New York Court of Appeals in the decision *Sage v. Proskauer Rose Goetz & Mendelsohn, L.L.P.*, 91 N.Y.2d 30, 689 N.E.2d 879 (1997). Milbank agreed to provide a log describing documents that were not being produced, based upon its position that many documents fell within the exception to turnover included in the *Sage* decision.

A further hearing on the Motion was held on March 25, 2009 to consider the Plan Trustee's objections to the partial log provided by Milbank. The Plan Trustee argued that the log did not provide any substantial cause for withholding of documents from turnover. As a result of the March 25, 2009 hearing, Milbank was directed to complete the log of documents not produced, and both the Plan Trustee and Milbank were directed to select twenty-four documents each from the log for the Court to review *in camera* to determine whether the withheld documents fell within the exception to turnover as set forth in the *Sage* decision.

On April 30, 2009, Milbank provided a 623-page Partial Log of Documents Not Produced (the "Log") to the Plan Trustee. On May 8, 2009, the documents selected by each party for the Court's *in camera* review were delivered to chambers and examined prior to hearing. At the hearing on May 12, 2009, the parties presented oral argument regarding whether selected documents should be turned over to the Plan Trustee.

Discussion

Milbank is required to turn over documents related to Milbank's representation of the Montana Power Company to the Plan Trustee in accordance with the standard as set forth in the *Sage* decision, which provides that, barring a substantial showing by the former attorneys of good cause to refuse client access, the client should be entitled to inspect and copy work product

3

materials created during the course of the attorneys' representation.[5] *Sage*, 689 N.E.2d at 883. However, attorneys are not required to turn over (1) any documents which violate a duty of nondisclosure owed to a third party or otherwise imposed by law; or (2) firm documents intended for internal law office review and use. *Id.* The latter exception (the "Internal Document Exception") to the turnover of documents recognizes "the need for lawyers to be able to set down their thoughts privately in order to assure effective and appropriate representation." *Id.* (quoting Restatement [Third] of Law Governing Lawyers, §58 comment c (Proposed Final Draft No. 1, 1996)). The Internal Document Exception includes, for example:

> documents containing a firm attorney's general or other assessment of a client, or tentative preliminary impressions of the legal or factual issues presented in the legal representation, recorded primarily for the purpose of giving internal direction to facilitate performance of the legal services entailed in that representation. Such documents presumably are unlikely to be of any significant usefulness to the client or to a successor attorney.

*Id.*

---

[5]The *Sage* Court adopted the view of the majority of courts, and state legal ethics advisory bodies, considering the issue of a client's access to the attorney's file in a represented matter, upon termination of the attorney-client relationship, when no claim for unpaid legal fees is outstanding. *Sage*, 689 N.E.2d at 881-81. That view "presumptively accord[s] the client full access to the entire attorney's file on a represented matter with narrow exceptions." *Id.* at 881.

The "minority" view "distinguish[es] between the 'end product' of an attorney's services, the documents . . . which belong to the client, and the attorney's 'work product' leading to the creation of those end product documents, which remain the property of the attorney." *Sage*, 689 N.E.2d at 881. Under the minority view, "end product" includes such items as pleadings actually filed in an action, correspondence with a client, opposing counsel and witnesses, and other papers "exposed to public light by the attorney to further [the] client's interests," as well as final versions of contracts, wills, corporate records and similar documents prepared for the client's use. *Id.* The attorney work product, to which the client is not entitled access, includes preliminary documents such as internal memoranda, and preliminary drafts of pleadings and legal instruments. *Id.* at 882. The minority view allows a client access to attorney work product only upon showing "a demonstrated need [for the documents] in order to understand the end product documents, with the burden of justification on the client." *Id.*

Milbank previously argued that certain categories of internal firm documents did not have to be turned over to the Trustee based upon the Internal Document Exception. Upon consideration of the standards enunciated in *Sage*, I conclude that Milbank may withhold the following types of documents from turnover: (a) attorney notes that record his/her preliminary assessment of the legal and factual issues presented in the legal representation, (b) internal communications between Milbank attorneys and employees giving direction to facilitate performance of the legal representation, and (c) incomplete documents circulated only within the law firm that contain a lawyer's preliminary assessment of legal and factual issues.

Further, I conclude that the following types of documents which Milbank sought to withhold do not fall within the Internal Document Exception discussed above and must be turned over to the Plan Trustee, even though those documents were circulated only within the firm: (a) research memos prepared by junior lawyers for senior lawyers; (b) drafts of documents analyzing legal and factual issues, (c) outlines of research issues, and (d) computerized data reflecting expenses and attorney time records that form the basis of, but are not, client invoices.

An order consistent with the foregoing will be entered. Furthermore, to assist the parties in applying the foregoing concepts, attached as Exhibit "A" to the Order are the charts showing the Plan Trustee's and Milbank's selections from the Log for the Court's *in camera* review. Each entry on the chart is marked with a handwritten "T" for documents that Milbank must turn over to the Plan Trustee, or a "W" for documents that Milbank may withhold from turnover.

BY THE COURT:

_____
KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

Dated: May 14, 2009