UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | CHAPTER 11 |
| | (Jointly Administered) |
| **TOUCH AMERICA HOLDINGS, INC,** | |
| *et al.*[1] | Case No. 03-11915 (KJC) |
| Debtors | |

# MEMORANDUM[2]

## BY: KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE

By the Memorandum and Order dated January 18, 2008, I granted, in part, the Plan Trustee's Motion for subordination or disallowance of certain indemnification claims filed by the Debtors' officers and directors (docket nos. 3596 and 3597). *In re Touch America Holdings, Inc.*, 381 B.R. 95 (Bankr.D.Del. 2008). Currently before the Court is a remaining issue arising from the Plan Trustee's motion for partial summary judgment for disallowance of officer and director claims for indemnification or reimbursement of attorney fees and costs pursuant to Bankruptcy Code §502(e)(1)(B). For the reasons set forth herein, the Trustee's request for summary judgment on the remaining issue will be granted.

## BACKGROUND

Many of the Debtors' officers and directors were named as defendants in a number of

---

[1] The following chapter 11 cases are being jointly administered pursuant to an Order dated June 23, 2003 (docket no. 27) : Touch America Holdings, Inc., Touch America, Inc., Entech, LLC, Touch America Purchasing Company, LLC, Touch America Intangible Holding Company, LLC, Sierra Touch America, LLC, and American Fiber Touch, LLC. (the "Debtors").

[2] This Memorandum constitutes the findings of fact and conclusions of law required by Fed.R.Bankr.P. 7052. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and §157(a). Venue is proper pursuant to 28 U.S.C. § 1409. This contested matter involves a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and (b)(2)(B).

civil actions filed in various state and federal courts asserting damages for acts or omissions taken by the Debtors and their officers and directors prior to the bankruptcy filing.[3] The officers and directors filed proofs of claim seeking indemnification, reimbursement, and contribution for costs incurred and for any judgment of liability entered against them in the Civil Actions.[4]

The Plan Trustee filed a motion to subordinate or disallow certain indemnification claims filed by the Debtors' Officers and Directors pursuant to Bankruptcy Code Sections 510(b) and 502(e)(1)(B) and Bankruptcy Rule 3007 (docket no. 3020) (the "Subordination and Disallowance Motion"). The Plan Trustee also filed a motion for partial summary judgment with respect to the Subordination and Disallowance Motion (docket no. 3117) (the "SJ Motion"). The parties filed a Stipulation on May 22, 2007 (docket no. 3440) pursuant to which the Officers and Directors agreed to withdraw their claims with respect to a number of the Civil Actions. However, the parties asked the Court to decide the Subordination and Disallowance Motion for the remaining Civil Actions, including the Edwards Litigation.[5]

---

[3] A list of the relevant civil actions is set forth in n. 4 of the January 18, 2008 Memorandum. *See In re Touch America Holdings, Inc.*, 381 B.R. 95, 99 n.4 (Bankr.D.Del. 2008)(the "Civil Actions").

[4] The Trustee objected to the following proofs of claim: Tucker Hart Adams (claim no. 3140); Alan F. Cain (claim no. 3130); John G. Connors (claim no. 3121); Robert Cope (claim no. 3117); R.D. Corette (claim no. 3116); Richard F. Cromer (claim no. 3113); Kay Foster (claim no. 3128); Robert P. Gannon (claim no. 3136); John D. Haffey (claim no. 3103); John J. Jester (claim no. 3138); Carl Lehrkind, III (claim no. 3102); Deborah McWhinney (claim no. 3106); Michael J. Meldahl (claim no. 3126); Pamela K. Merrell (claim no. 3114); Jerrold P. Pederson (claim no. 3111); Ellen M. Senechal (claim no. 3112); Noble E. Vosburg (claim no. 3133); and Michael E. Zimmerman (claim no. 3119) (jointly referred to herein as the "Officers and Directors" or the "Claimants"). Because Tom Ashburn (claim no. 3108) did not file any response to the Trustee's Objection, he is not included in the foregoing defined terms, because the Trustee intended to file a motion for default judgment against him.

[5] The "Edwards Litigation" is described in the January 18, 2008 Memorandum and Order, as well as in the Subordination and Disallowance Motion, as a civil action filed against, *inter alia*, certain Debtors and the Officers and Directors, pending in the Montana Second Judicial District Court (Silver Bow County) and docketed as *Edwards v. Montana Power Co., et al.*, Cause No. DV-03-36.

A detailed description of the Edwards Litigation is set forth in the January 18, 2008 Memorandum. *Touch America,* 381 B.R. at 106-07. Briefly, the plaintiffs in the Edwards Litigation were participants in the Montana Power Company U.S. Oil and Gas Operations Management MVA Incentive Plan (the "MVA Plan"). Upon termination of the MVA Plan, only 25% of the amount accumulated under the MVA Plan was distributed to participants. The plaintiffs asserted claims against the Debtors and certain Officers and Directors based on negligence, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, and fraud.

The Plan Trustee argues that the Officers' and Directors' indemnification claims related to the Edwards Litigation should be disallowed pursuant to Bankruptcy Code §502(e)(1)(B). In January 18, 2008 Memorandum and Order, I granted, in part, the Plan Trustee's SJ Motion. However, I reserved judgment, pending further briefing by the parties, on the issue of whether the Officers' and Directors' indemnification claims for attorney fees and costs incurred in defending the Edwards Litigation (i.e., the "Defense Costs") should be disallowed pursuant to Bankruptcy Code §502(e)(1)(B).

The parties' supplemental briefs were filed on February 14, 2008, and oral argument was held on February 20, 2008. As requested, the parties focused on the decision *In re RNI Wind Down Corp.*, 369 B.R. 174, 181 (Bankr.D.Del. 2007). The Debtors distinguished that case, arguing that the *RNI Wind Down* Court allowed claims for advancement of legal costs, rather than general indemnification claims, and that the Officers and Directors here have not sought, and had no separate right to, advancement of legal costs. The Officers and Directors argue that their claim for indemnification of Defense Costs should not be disallowed under Bankruptcy

3

Code §502(e)(1)(B) because there is no co-liability with the Debtors for such claims. In the alternative, the Officers and Directors argue that, like the claimant in *RNI Wind Down*, they have claims for advancement of Defense Costs, that are not contingent, and should not be disallowed.

## DISCUSSION

To achieve disallowance of a claim under Bankruptcy Code §502(e)(1)(B), the Plan Trustee must prove three elements: (i) the claim must be contingent, (ii) the claim must be for reimbursement or contribution, and (iii) the debtor and the claimant must be co-liable on the claim.[6] *RNI Wind Down*, 369 B.R. at 181 *citing In re Pinnacle Brands, Inc.*, 259 B.R. 46, 55 (Bankr.D.Del. 2001). In the January 18, 2008 Memorandum, I concluded that the Officers' and Directors' indemnification claims for liability arising out of the Edwards Litigation satisfied all three elements and, therefore, disallowed the liability portion of the claims pursuant to Bankruptcy Code §502(e)(1)(B). I now review whether all three elements are satisfied with respect to the Officers' and Directors' claims for the Defense Costs.

(a)     <u>Reimbursement</u>

As stated in the January 18, 2008 Memorandum, "[c]ourts have consistently held that 'the concept of reimbursement includes indemnity.'" *RNI Wind Down*, 369 B.R. at 181-82 quoting *In re Vectrix Bus. Solutions, Inc.*, 2005 WL 3244199 at *3 (Bankr.N.D.Tex. Sept. 1, 2005). Thus, the Officers' and Directors' claims for indemnification of Defense Costs, if considered standing

---

[6]Bankruptcy Code §502(e)(1)(B) provides, in pertinent part, as follows:
(e)(1)    [T]he court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that - -
....
    (B)    such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution;
11 U.S.C. §502(e)(1)(B).

4

alone, meet one element of §502(e)(1)(B).

(b)  <u>Contingent</u>

"A claim is contingent where it 'has not yet accrued and . . . is dependent upon some future event that may never happen." *RNI Wind Down*, 369 B.R. at 182 quoting *In re GCO Services, LLC*, 324 B.R. 459, 466 (Bankr.S.D.N.Y. 2005). An indemnification claim is often considered to be contingent until the underlying litigation is resolved because:

> [t]he right is typically subject to a requirement that the indemnitee [has] acted in good faith and in a manner that he reasonably believed was in the best interest of the company. As a result, an indemnification dispute generally cannot be resolved until after the merits of the underlying controversy are decided because the good faith standard requires a factual inquiry into the events that gave rise to the lawsuit.

*RNI Wind Down*, 369 B.R. at 185-86 quoting *Majkowski v. Am. Imaging Mgmt. Svcs.*, 913 A.2d 572, 586 (Del.Ch. 2006).

In *RNI Wind Down*, my colleague, Judge Sontchi, determined that an officer's claim for advancement of defense costs was not contingent, thereby distinguishing that claim from an indemnification claim requesting reimbursement. In *RNI Wind Down*, the officer waived his right to indemnification for any losses incurred as a result of the underlying claims, *except* for advancement of attorney fees and expenses. *Id.* at 183. In discussing the element of contingency, Judge Sontchi distinguished the officer's advancement rights from a typical indemnification claim, writing:

> [A]dvancement, by contrast, is a right whereby a potential indemnitee has the ability to force the company to pay his litigation expenses as they are incurred regardless of whether he will ultimately be entitled to indemnification. Advancement is typically not conditioned on a finding that the party seeking advancement has met any standard of conduct. The only proviso is that the officer must undertake to repay all monies advanced to him if it is later determined that he is not entitled to indemnification.

5

*RNI Wind Down*, 369 B.R. at 186 (internal quotations and citations omitted). Because the officer had an undisputed right to pre-indemnification advancement of litigation expenses, Judge Sontchi determined that the officer's claim was not contingent. *Id.* at 187.

In the matter before me, the parties now dispute whether the Officers and Directors have a right to advancement of their attorney fees and costs. The Plan Trustee argues that the wrongs alleged in the Edwards Litigation arose while the Officers and Directors were acting on behalf of the Montana Power Company, a Montana corporation, and the Montana Power Company bylaws provide for indemnification, but not advancement, of legal costs.[7] The Officers and Directors argue, however, that they are entitled to advancement of legal costs pursuant to Delaware General Corporate Law, 8 Del.Code §145, and the by-laws of Touch America Holdings, Inc., a Delaware corporation. Touch America Holdings, Inc. is named as a defendant in the amended complaint filed in the Edwards Litigation, and the Officers and Directors are described in the complaint as acting on behalf of Montana Power Company, Touch America, Inc., Touch America Holdings, Inc., as well as other corporate defendants.

The matter before me is an objection to the proofs of claim filed by the Officers and Directors. Their proofs of claim broadly state that they are filed:

> to protect and preserve all of the Creditor's rights and remedies under the certificate of incorporation, articles of incorporation and bylaws of the Debtor, the indemnification statutes under applicable state law, any employment, indemnification, severance, or other agreements between the Creditor and the Debtor or of one of its subsidiaries or affiliates, any applicable liability insurance of the Debtor, and any other applicable right by reason of contract or law.

---

[7] The Plan Trustee notes that the Touch America Plan Trust may have successor liability for certain debts of the Montana Power Company. However no record on the issue of successor liability is before me and I do not make any finding or conclusion of law on that issue. *See Touch America*, 381 B.R. at 109 n. 18.

*See* Proof of Claim, p.1.[8]  The proofs of claim also assert that:

1. [T]he Creditor [i.e., the officer or director] has indemnification claims against the Debtor to the extent that the Creditor is liable for any of the obligations covered by such indemnification provisions.  Such claims are general unsecured claims to the extent they arise out of acts or omissions occurring prior to the Petition Date and are administrative expense claims to the extent they arise out of acts or omission[s] occurring after the Petition Date.  Such claims [are] presently contingent and unliquidated in amount, except for the past and ongoing costs associated with the Creditor's defense, in the Litigation, for which the Creditor may be liable for a pro rata share to the extent not covered by insurance.

2. Pursuant to applicable law, the Creditor, as joint tortfeasor or other jointly obligated party has claims for reimbursement, contribution, indemnification or common or statutory law indemnification or contribution against the Debtors to the extent that the Creditor pays or satisfies any of the claimed obligations or otherwise becomes obligated on the Debtor's liabilities.
   . . . .

5. Neither this Proof of Claim nor any of the claims asserted herein constitutes . . . (5) a waiver of any right to indemnification advancement of defense costs, . . . .

Proof of Claim, ¶¶ 1, 2, and 5.

Even if the Officers and Directors are entitled to avail themselves of any rights, including advancement, provided in the by-laws of Touch America Holdings, Inc., the record before me is not sufficient to support a finding that they properly requested advancement from the Debtors.[9]

---

[8] An example of the proofs of claim (the "Proof of Claim") filed by the Officers and Directors was attached as Exhibit E to the Declaration of David J. Richardson In Support of Plan Trustee's Supplemental Brief on Disallowance of Claims of Officers and Directors for Attorneys' Fees and Costs Related to Edwards Litigation (docket no. 3616).

[9] The Officers and Directors provided no evidence that they asked the Debtors to advance their Defense Costs with respect to the Edwards Litigation. Once the moving party has made a proper motion for summary judgment, the burden shifts to the non-moving party, pursuant to Rule 56(e), which states, "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed R. Civ. P. 56(e); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.

(c) <u>Co-liability</u>

The co-liability element of §502(e)(1)(B) requires "a finding that the causes of action in the underlying lawsuit assert claims upon which, if proven, the debtor could be liable but for the automatic stay." *In re Wedtech Corp.*, 85 B.R. 285, 290 (Bankr.S.D.N.Y. 1988). In other bankruptcy cases, claimants have argued that their claims for indemnification of defense costs should be considered separately from their claims for indemnification of the underlying liability arising from a third-party's cause of action, because there is no co-liability with the debtor on defense costs. *See, e.g., Sorenson v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 146 B.R. 92, 97 (S.D.N.Y. 1992)("Drexel I"), and *In re Drexel Burnham Lambert Group, Inc.*, 148 B.R. 982, 988 (Bankr.S.D.N.Y. 1992)("Drexel II"). In considering the co-liability prong of §502(e)(1)(B), the *Drexel I* Court rejected the claimant's request to consider the defense costs separately, writing:

> Appellant's attempt to segregate these cost-related claims from the underlying indemnity claims on the basis of co-liability ignores the fact that they are simply different facets of the same unified whole. The interdependence between appellant's defense costs and the underlying action for indemnification places all of appellant's claims under the umbrella of §502(e)(1)(B), and thus all claims are disallowed under that subsection.

*Drexel I*, 146 B.R. at 97. Faced with a similar argument in *Drexel II*, the Court wrote:

> [T]he co-liability factor is determined by reference to the underlying third party action. If there is co-liability in the underlying action, then any amounts sought by way of indemnification or reimbursement "on account" of this underlying suit are subject to §502(e)(1)(B) objection.

*Drexel II*, 148 B.R. at 989 citing *In re Wedtech Corp.*, 87 B.R. 279, 287 (Bankr. S.D.N.Y. 1988) (deciding that the statute uses the broad term "reimbursement" to "encompass whatever claims a codebtor has which entitle him to be made whole for monies he has expended on account of a

8

debt for which he and the debtor are both liable.")

In *RNI Wind Down*, the Court analyzed the *Drexel I* and *Drexel II* decisions, but determined that a claim for advancement of defense costs should not be disallowed under §502(e)(1)(B), because the debtor and the officer could only be co-liable on the underlying claims, *not* the defense costs associated with such claims. *RNI Wind Down*, 369 B.R. at 190-91. The *RNI Wind Down* Court noted that the purpose of the statute is "to prevent a double payment by the estate" and concluded that there was no risk of the debtors making a double payment on the officer's defense costs. *Id.* at 190.

However, in *RNI Wind Down*, the officer waived his right to indemnification of any claim arising from the underlying claims at issue in the lawsuits. Only the claim for advancement (not indemnification) of attorneys' fees remained and was asserted. Because the advancement claim in *RNI Wind Down* was asserted as a stand-alone claim and not as a component of an overall indemnification claim, *RNI Wind Down* is distinguishable from the matter before me and those discussed in *Drexel I, Drexel II*, and *Wedtech*.

In my January 18, 2008 decision, I said:

> At least one defendant in the Edwards Litigation is a debtor in this case, i.e., Touch America, Inc.. As discussed above, the Edwards Litigation complaint alleges claims for negligence, breach of implied covenant of good faith and fair dealing, breach of fiduciary duty and fraud. Under Montana law, "[a]s a matter of public policy, officers and agents of a corporation are shielded from personal liability for acts taken on behalf of the corporation in furtherance of corporate goals, policies and business interests. The exception to this policy is where the officer personally committed a tort." *Little v. Grizzly Mfg.*, 195 Mont. 419, 424, 5636 P.2d 839, 842 (Mont. 1981) (citations omitted). The Edwards Litigation alleges that all of the defendants committed the torts described in the complaint. If proven, Touch America, Inc. and some Officers and Directors could be co-liable on the underlying merits of the Edwards Litigation.

9

*Touch America*, 381 B.R. at 108-09.

Like the courts in *Drexel I* and *Drexel II*, I now conclude that "[t]he interdependence between [the claimant's] defense costs and the underlying action for indemnification costs places all of [the claimant's] claims under the umbrella of §502(e)(1)(B)." *Drexel I*, 146 B.R. at 97, *Drexel II*, 148 B.R. at 989. Accordingly, the Defense Costs will be disallowed under §502(e)(1)(B).

An appropriate order will be entered.

BY THE COURT:

_____
KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

Dated: July 30, 2009